UNITED STATES of America,
Plaintiff-Appellee,

v.

George DADANIAN and Jean Dadanian,
Defendants-Appellants.

Nos. 85–5095, 85–5248.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 3, 1986.

Decided June 4, 1987.

Howard L. Weitzman and Jerald W. Newton, Santa Monica, Cal., for defendants-appellants.

Fred Heather and Janet Goldstein, Los Angeles, Cal., for plaintiff-appellee.

Before CHAMBERS and KOZINSKI, Circuit Judges, and STRAND,* District Court Judge.

CHAMBERS, Circuit Judge:

This appeal arises from the conviction of George and Jean Dadanian, brothers, for mail fraud and running an illegal gambling business. *See* 18 U.S.C. §§ 1341, 1955. George Dadanian was also convicted of interstate travel in aid of a racketeering enterprise and racketeering. *See* 18 U.S.C. §§ 1952, 1962(c). Appellants challenge their convictions on several grounds. We find that none of these grounds warrants reversal and affirm.

### BACKGROUND

This prosecution was the result of the Dadanians' involvement in a fraudulent scheme to acquire a poker license in the City of Bell, California.

John Pitts, the Bell City Administrator and Peter Werrlein, a Bell City Councilman, persuaded the City of Bell to authorize poker playing and to grant one poker club license in the city to the California Bell Club (CBC) in which they held a secret fifty-one percent interest. Initially Kevin Kirwan held Pitts' and Werrlein's interest on their behalf. A dispute arose between

---

* Honorable Roger G. Strand, United States District Judge for the District of Arizona, sitting by designation.

Kirwan and Pitts, and Pitts decided to change his front man from Kirwan to George Danadian. In order to preserve the appearance that Kirwan was selling his club interest to Dadanian rather than transferring Pitts' hidden interest, the Dadanians paid Kirwan with money he was to return to them "under the table." George Dadanian and Kirwan traveled from Los Angeles to Las Vegas where they executed the documents for the interest transfer.

When the Dadanians applied to the Bell city council for approval to hold an interest in the CBC, they failed to disclose their interest was secretly held for Pitts. George Dadanian held Pitts' interest in exchange for which Pitts agreed to assist the Dadanians in acquiring a second poker club license in the City of Bell. Also, it was decided Pitts would receive $5,000 a month from the CBC distributions paid to the Dadanians. Pitts entered into a plea agreement with the government and testified against the Dadanians at trial.

## ADMISSION OF PLEA AGREEMENT TERMS

The Dadanians first contend that the district court erred in admitting Pitts' testimony that his plea agreement provided he would "truthfully and honestly cooperate with the government" and in admitting the agreement itself. They argue this evidence constituted impermissible vouching for Pitts.

Because the Dadanians did not object at trial to this portion of Pitts' testimony or to admission of the agreement, "we may not review this evidentiary ruling unless appellant[s] can demonstrate that the admission of the evidence was plain error affecting [their] substantial rights. Fed.R.Crim.P. 52(b)." *United States v. Hurt,* 795 F.2d 765, 773 (9th Cir.1986), *modified,* 808 F.2d 707 (1987). "Plain error is shown if the evidence was inadmissible and its admission affected the outcome and [defendants'] right to a fair trial." *United States v. Houser,* 804 F.2d 565, 570 (9th Cir.1986).

■ Vouching may occur if the prosecution places the prestige of the government behind the witness or indicates that infor-

mation not before the jury supports the witness's testimony. *Lawn v. United States,* 355 U.S. 339, 359–60 n. 15, 78 S.Ct. 311, 323 n. 15, 2 L.Ed.2d 321 (1958). Only the first type of vouching is at issue here.

The Dadanians' reliance on *United States v. Roberts,* 618 F.2d 530 (9th Cir. 1980) to demonstrate impermissible vouching is misplaced. In *Roberts* the prosecutor during closing argument referred to evidence not in the record by declaring that a detective had monitored the trial testimony of a government witness. The jury could naturally infer that the detective had personal knowledge of relevant facts and was satisfied that these facts were accurately stated by the witness. We found the inference to be improper vouching for the credibility of a government witness.

■ No such vouching occurred here. The government did not offer personal assurances of Pitts' veracity. The government did not point to evidence outside the record or create an improper inference as to Pitts' credibility. We have upheld the admission of "truthful testimony" portions of a cooperation agreement with the government where the agreement was relevant to material facts at issue and the party to the agreement was subject to cross examination as to his motives. *See United States v. Rohrer,* 708 F.2d 429, 433 (9th Cir.1983). We do so again here. The agreement was relevant to the material facts at issue and Pitts was subject to extensive cross-examination. As admission of the terms of the plea agreement was proper, appellants have failed to demonstrate plain error.

## INEFFECTIVE ASSISTANCE OF COUNSEL

■ The Dadanians argue also that trial counsel should have objected to the introduction into evidence of Pitts' plea agreement with the government. They contend failure to do so constituted ineffective assistance. We reject this argument. Since admission of the terms of the agreement was proper, failure to make the objection did not fall below an objective standard of

reasonableness. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984). Moreover, this failure did not prejudice the Dadanians so that it was reasonably likely to have altered the outcome of their trial. *Id.*, at 694, 104 S.Ct. at 2068.

## SUFFICIENCY OF THE MAIL FRAUD CONVICTIONS

The mail fraud counts of the indictment charged the mailing of false statements of economic interest by Pitts to the California Fair Political Practices Commission. In completing the statements, Pitts failed to disclose his hidden interest in and income from the California Bell Club. Count Nine also charged the mailing of a letter by Pitts to a plaintiff in a lawsuit filed by the limited partners of the CBC against the Danadians alleging the secret ownership arrangement. Enclosed with the letter was a copy of a false economic interest form. The letter urged Pitts be dismissed from the lawsuit.

The Dadanians contend there is insufficient evidence to support their convictions for mail fraud because the government failed to establish that the mailings were reasonably foreseeable. They also contend the mailing by Pitts of false statements of economic interest was in his official capacity and "legally compelled."

In reviewing a claim for insufficient evidence, this court must determine after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *United States v. Stewart*, 770 F.2d 825, 831 (9th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 888, 88 L.Ed.2d 922 (1986), [citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)].

■■■ The elements of mail fraud are: (1) a scheme or artifice to defraud; and (2) use of the mails in furtherance of the scheme. *United States v. Vaughn*, 797 F.2d 1485, 1492–93 (9th Cir.1986). One causes the mail to be used when he "does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended." *Pereira v. U.S.*, 347 U.S. 1, 8–9, 74 S.Ct. 358, 362–63, 98 L.Ed. 435 (1954).

"It is well settled ... that so long as one participant in a fraudulent scheme causes a use of the mails in execution of the fraud, all other knowing participants in the scheme are legally liable for that use of the mails." *United States v. Toney*, 598 F.2d 1349, 1355 (5th Cir.1979), *cert. denied*, 444 U.S. 1033, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980).

■■■ In viewing the evidence in the light most favorable to the government, a jury could reasonably find that the Danadians could have foreseen that Pitts, as Bell City Administrator, would file statements of economic interest with the Fair Political Practices Commission. Since the concealment of Pitts' CBC financial interest was the cornerstone of the scheme to defraud, it was reasonably forseeable that Pitts would falsify and mail his economic interest statements to ensure nondisclosure. Similarly, the mailing of the letter denying Pitts' interest in CBC to the limited partners who had sued the Dadanians was reasonably forseeable. A rational jury could have found beyond a reasonable doubt that the Dadanians knew of the scheme to defraud and that the mail was used in furtherance thereof.

We reject appellants' contention that their mail fraud convictions are invalid under *Parr v. United States*, 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960) because the mailings were "legally compelled." In *Parr* the mailing of tax assessments which did not contain misrepresentations was held not to be an unlawful execution of a fraudulent scheme to embezzle school district funds since the defendants were required by law to assess and collect taxes, and because the tax assessments were neither alleged nor proved to be illegal, excessive or padded. *Id.*, at 387, 391, 80 S.Ct. at 1181, 1183. Here Pitts' statements of economic interest, while required by law to be filed, were false on their face. Unlike

*Parr,* these false statements were made in furtherance of the scheme to keep secret that Dadanian held the CBC interest for Pitts. *See United States v. Bagnariol,* 665 F.2d 877, 899 (9th Cir.1981) (per curiam), *cert. denied,* 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982).

## SUFFICIENCY OF THE INDICTMENT THE TRAVEL ACT COUNT

George Dadanian argues his conviction on the Travel Act count, 18 U.S.C. § 1952,[1] must be set aside because the indictment did not allege sufficiently the third element of the offense.

■ We review the sufficiency of an indictment *de novo. United States v. Benny,* 786 F.2d 1410, 1414 (9th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986). "[T]he indictment must allege the elements of the offense charged and the facts which inform the defendant of the specific offense with which he is charged." *United States v. Lane,* 765 F.2d 1376, 1380 (9th Cir.1985) (citing *Russell v. United States,* 369 U.S. 749, 763, 82 S.Ct. 1038, 1046, 8 L.Ed.2d 240 (1962)). *Accord United States v. Gray,* 809 F.2d 579, 583 (9th Cir.1987). Also, "the indictment must provide the defendant with a description of the charges against him in sufficient detail to enable him to prepare his defense and plead double jeopardy at a later prosecution." *Lane,* 765 F.2d at 1380. "An indictment which tracks the offense in the words of the statute is sufficient if those words fully, directly, and expressly set forth all the elements necessary to constitute the offense intended to be proved." *United States v. Tavelman,* 650 F.2d 1133, 1137 (9th Cir.1981), *cert.*

*denied,* 455 U.S. 939, 102 S.Ct. 1429, 71 L.Ed.2d 649 (1982).

■ An indictment under the Travel Act requires allegations of three elements: (1) interstate commerce or use of an interstate facility; (2) with intent to promote an unlawful activity; and (3) a subsequent act in furtherance of that activity. *Tavelman,* 640 F.2d at 1138 (citing *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974)).

■ The indictment in this case is adequate. It alleged that on or about January 22, 1981, (1) George Dadanian traveled interstate between California and Nevada; (2) with intent to promote a violation of §§ 67 and 68 of the California Penal Code (specifically bribery and receiving bribes); and (3) thereafter did promote, manage, carry or, facilitate and commit these crimes, in violation of 18 U.S.C. § 1952.

The third allegation that Dadanian did promote, manage, carry or facilitate the crime of interstate travel with the intent to promote bribery in violation of § 1952 provided Dadanian with a sufficient description of the charges against him. The indictment tracked the offense in the words of the statute and set forth adequately the third element of subsequent acts in furtherance of interstate commerce. These allegations are sufficient to state a violation of 18 U.S.C. § 1952.

## AN ILLEGAL GAMBLING BUSINESS UNDER 18 U.S.C. § 1955

The Dadanians contend the California Bell Club was not an illegal gambling business within the meaning of 18 U.S.C. § 1955[2] since its operation was not in viola-

---

**1.** 18 U.S.C. § 1952 provides in part:
  (a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—
    (1) distribute the proceeds of any unlawful activity; or
    (2) commit any crime of violence to further any unlawful activity; or
    (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or

attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $20,000 or imprisoned for not more than five years, or both.

**2.** Section 1955 provides, in part:
  (a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.
  (b) As used in this section—

tion of state gambling laws as provided in § 1955(b)(1)(i). This argument presents a question of first impression.

■■■ We begin the analysis with the premise that criminal statutes are to be construed narrowly, *FCC v. American Broadcasting Co.*, 347 U.S. 284, 296, 74 S.Ct. 593, 600–01, 98 L.Ed. 699 (1954). In construing a statute in a case of first impression we look first to the language of the statute itself, and second to the statute's legislative history. *See Brock v. Writers Guild of America, West, Inc.*, 762 F.2d 1349, 1353 (9th Cir.1985). The plain meaning of the words used controls, absent a clearly expressed legislative intent to the contrary. *Powell v. Tucson Air Museum Foundation of Pima County*, 771 F.2d 1309, 1311 (9th Cir.1985). Our review is de novo. *See United States v. Louisiana-Pacific Corp.*, 754 F.2d 1445, 1447 (9th Cir. 1985).

The expressed purpose of Congress in enacting § 1955 was to confer federal jurisdiction over "illegal gambling." (see, e.g., H.R.Rep. No. 1549, 91st Cong., 2d Sess. 53 (1970), U.S.Code Cong. & Admin.News 1970 p. 4007; S.Rep. No. 617, 91st Cong., 1st Sess. 73 (1969)). The statute focuses on the operation of an "illegal gambling business" which is "a violation of the law of a state or political subdivision in which it is conducted."

California state law permits the operation of poker clubs if authorized by local law. Cal.Penal Code § 337 (West 1970). The Bell Municipal Code §§ 4220–4237 authorizes the operation of gambling establishments provided those establishments comply with the Bell gambling ordinance. That ordinance requires full disclosure of all persons with an interest in a gambling operation. City of Bell, Cal.Mun.Code § 4222 (1978). Section 4237 requires that any interest, acquisition or transfer in a card club be disclosed and specifically prohibits the transfer of an interest without the consent and permission of the Bell City Council. Section 1100 of the Bell Municipal Code provides that violation of any of the above provisions is a misdemeanor. The gambling operation in this case, the California Bell Club, involved the violation of the Municipal Code of the City of Bell inasmuch as the Dadanians violated its disclosure laws.

■■■ The Dadanians' contention that the CBC held a facially valid gambling license and therefore was a business not in violation of state law is specious. As this court stated in *United States v. Polizzi*, 500 F.2d 856, 871 (9th Cir.1974), *cert. denied*, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975) which considered and rejected a similar argument as it related to 18 U.S.C. § 1952, "Acceptance of this construction ... would effectively emasculate the statutory scheme of requiring the disclosure of the identities of the persons who would be involved in the gambling enterprise." The disclosure requirement of the Bell Municipal Code surely is designed to prevent the infiltration of criminal elements into gambling in the City of Bell. Acceptance of the construction offered by the Dadanians would afford a shield to criminal activity never intended.

Moreover, the legislative intent of § 1955 is to single out for federal prohibition "the element of gambling operations involving the corruption of local law-enforcement officials ... and to make it possible for the Federal government to intervene where local and State governments have become ... incapable of law enforcement by reason of the corruption of responsible officials." S.Rep. No. 617, 91st Cong., 1st Sess. 74 (1969). The statute was intended to aid and supplement local law enforcement efforts. 116 Cong.Rec. 591 (1970). The collusion between the Dadanians and the local corrupt city administrator Pitts is one of the kinds of conduct § 1955 contemplated.

---

(1) "illegal gambling business" means a gambling business which—
    (i) is a violation of the law of a State or political subdivision in which it is conducted; (ii) involves five or more persons who conduct, finance, manage, supervise, direct,

or own all or part of such business; and (iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

The plain language of the statute and its legislative history support this construction. We find no legislative intent to the contrary.

We conclude that § 1955 was intended to reach the conduct engaged in by the Dadanians. The government must show under § 1955 that the California Bell Club is a gambling business conducted in violation of state or local law. This it has done.

## CLAIM OF SIXTH AMENDMENT VIOLATION

Finally, the Dadanians claim that their sixth amendment rights under the confrontation clause were violated by the district court's failure to allow cross examination of Pitts about his maximum jail time exposure. This argument has no merit.

While the sixth amendment guarantees criminal defendants the right to cross-examine adverse witnesses to uncover bias and to expose motive in testifying, the right is not absolute. *Reiger v. Christensen*, 789 F.2d 1425, 1433 (9th Cir.1986). A trial judge's imposition of limits on defense counsel's inquiry into the potential bias of a prosecution witness is proper when based on concern about confusion of the issues or where the interrogation is repetitive or only marginally relevant. *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

The Dadanians' reliance on *Van Arsdall* is misplaced. There the trial court prohibited all inquiry into the possibility that a government witness would be biased as a result of the state's dismissal of a pending criminal charge. The Supreme Court found this ruling violated defendants' rights secured by the confrontation clause.

The facts of *Van Arsdall* do not remotely resemble the facts present here. Pitts was subject to extensive cross-examination about the terms of his agreement with the government. Defense counsel elicited the fact that in exchange for Pitts' cooperation the government agreed to dismiss nine mail fraud counts and illegal gambling and racketeering charges. On cross-examination Pitts admitted he had

lied to the FBI investigator who first questioned him, had perjured himself repeatedly, and falsified his income tax returns. Defense counsel was afforded more than an adequate opportunity to expose Pitts' potential bias and motive in testifying. The amount of jail time Pitts faced is at best marginally relevant. The Dadanians' sixth amendment rights were not violated.

AFFIRMED.