CENTRAL MONTANA ELECTRIC POW-
ER COOPERATIVE, INC.; Upper Mis-
souri G & T Electric Cooperative, Inc.,
Petitioners,

Montana Power Company,
Petitioner–Intervenor,

v.

ADMINISTRATOR OF the BONNE-
VILLE POWER ADMINISTRATION,
Respondent.

CENTRAL MONTANA ELECTRIC POW-
ER COOPERATIVE, INC.; Upper Mis-
souri G & T Electric Cooperative, Inc.,
Plaintiffs–Appellants,

Montana Power Company, Intervenor,

v.

ADMINISTRATOR OF the BONNE-
VILLE POWER ADMINISTRATION,
Defendant–Appellee.

Nos. 86–7602, 87–7080 and 87–3624.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 11, 1987.

Decided March 1, 1988.

Before CANBY* and BEEZER, Circuit Judges, and GRAY,** District Judge.

BEEZER, Circuit Judge:

Central Montana Electric Power Cooperative and Upper Missouri G & T Electric Cooperative (the Cooperatives) challenge the decision by the Administrator of the Bonneville Power Administration (BPA) to deny its request for an allocation of electricity produced at the Libby Dam and Reservoir (Libby). We conclude that the action is justiciable for review, original jurisdiction lies with this Court, and that the controlling statutes set forth no Montana preference for Libby power.

## FACTS

Libby is a federal hydroelectric project located in western Montana. The Administrator of the BPA is the federal marketing agent for all electric power produced by the United States government in the Pacific Northwest, which includes energy generated at Libby. In May 1986 the Cooperatives, on behalf of their member cooperatives serving consumers in eastern Montana, applied to the Administrator to purchase power from the Libby project under an asserted "Montana reservation." The BPA denied the requests, reasoning that it had no authority to provide Montana users with a preference to power from Libby because Congress had not established a Montana reservation for Libby power.

The Cooperatives simultaneously sought judicial review of the BPA's decision in this Court and in the District Court of Montana. The Cooperatives petitioned for a declaration that the electric power produced at Libby is reserved by law primarily for use in Montana and that they qualified as preference customers. The district court, 656

Richmond F. Allan, Washington, D.C., for petitioners Central Montana Elec. Power Co-op., et al.

Daniel O. Flanagan, Butte, Mont., for petitioner-intervenor Montana Power Co.

L. Randall Weisberg, Portland, Or., for respondent BPA.

* Judge Canby was drawn to replace Judge Kennedy. He has read the briefs and reviewed the record.

** Honorable William P. Gray, United States District Judge, Central District of California, sitting by disignation.

F.Supp. 781, concluded that the court of appeals had original jurisdiction over the controversy under section 9(e)(5) of the Pacific Northwest Electric Power Planning and Conservation Act (Northwest Power Planning Act), 16 U.S.C. § 839f(e)(5), and transferred the action to this Court. The district court reasoned that Congress intended that BPA decisions regarding allocation and marketing of power from Libby were to be governed by the provisions of the Northwest Power Planning Act. The Cooperatives subsequently appealed the transfer order. The three dockets generated by the case were consolidated for briefing.

## I

■ The Administrator contends that we should decline jurisdiction because the issue presented is not ripe for adjudication as envisioned in the case or controversy requirement of Article III of the Constitution. The Administrator argues that there is nothing upon which the Cooperatives' asserted preference may operate. Any power preference would operate only as a "tie-breaker" among competing applicants for a limited supply of federally marketed power that is actually available for distribution. An applicant holding a recognized power preference cannot compel the power marketing agent to breach pre-existing contracts with non-preference purchasers. *See City of Anaheim v. Duncan,* 658 F.2d 1326, 1330–31 (9th Cir.1981). Because of the amount of power committed for sale under existing long-term contracts, the Administrator maintains, there will be no available power for allocation under an asserted Montana preference until expiration of the present contracts in 2001.

■ Jurisdiction to award the declaratory relief that the Cooperatives seek exists only in "a case of actual controversy." 28 U.S.C. § 2201. A case is considered ripe for review when all "the essential facts establishing the right to declaratory relief have already occurred." *Wickland Oil Terminals v. Asarco, Inc.,* 792 F.2d 887, 893 (9th Cir.1986). The question we must address is "whether the facts alleged, un-

der all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941); *see also National Basketball Ass'n v. SDC Basketball Club, Inc.,* 815 F.2d 562, 565 (9th Cir.), *cert. dismissed,* — U.S. —, 108 S.Ct. 362, 98 L.Ed.2d 386 (1987). As we have noted, "[t]he issue is not whether the requested declaratory relief is hypothetical. Rather, the issue is whether the case presents a sufficiently concrete case and controversy upon which relief properly may be fashioned." *National Basketball Ass'n,* 815 F.2d at 566 n. 2.

■ The administrative record before us reveals that the BPA did not base its final determination of the Cooperatives' request on impossibility because of existing contracts. The BPA instead took the position that a geographic reservation for Montana was established by Congress with respect to the Hungry Horse project but not for the Libby project. As a result of the agency's statutory interpretation, the Administrator concluded that the BPA had no authority to provide users in Montana with a geographic preference to power from Libby.

What is involved between the parties is not an abstract question based upon the possibility of a factual situation that may never develop. The contention is over the proper construction of the controlling statutes. The declaratory relief sought by the Cooperatives is not so speculative as to render it non-justiciable. The Cooperatives allege that the Administrator's denial of their applications constitutes final agency action based exclusively on an erroneous construction of law, which deprives them of statutory rights. The Cooperatives seek, in essence, a declaration holding that the electric power produced by the Libby project is reserved by statute primarily for use in the State of Montana. The BPA has consistently been in direct conflict with the Cooperatives on the issue of a congression-

ally created geographic preference for Libby power, and has specifically denied their allocation requests based on its construction of the controlling statutes.

Upon examining the totality of the circumstances, we conclude that an actual controversy exists between parties having sufficient adverse legal interests, and that the essential facts establishing a right to declaratory relief have occurred. The statutory dispute between the Cooperatives and the BPA "calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." *Ashcroft v. Mattis*, 431 U.S. 171, 172, 97 S.Ct. 1739, 1740, 52 L.Ed.2d 219 (1977) (per curiam) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242, 57 S.Ct. 461, 464–65, 81 L.Ed. 617 (1937)). Accordingly, the case before us is justiciable and the Cooperatives' claim for declaratory relief is ripe for review.[1]

## II

■ The Cooperatives argue that the present case is not within our original jurisdiction under 16 U.S.C. § 839f(e)(5) to review the Administrator's denial of the allocation requests because such action was not taken "under" or "pursuant to" the Northwest Power Planning Act. Instead, the Cooperatives contend, the suit is under the jurisdiction of the district court under 28 U.S.C. §§ 1331, 1337 & 42 U.S.C. § 7192. We disagree.

Section 9(e)(5) of the Northwest Power Planning Act provides:

Suits to challenge the constitutionality of this chapter, or any action thereunder, final actions and decisions taken pursuant to this chapter by the Administrator or the Council, or the implementation of such final actions, whether brought pursuant to this chapter, the Bonneville

Project Act, the Act of August 31, 1964 (16 U.S.C. 837–837h), or the Federal Columbia River Transmission System Act (16 U.S.C. 838 and following), shall be filed in the United States court of appeals for the region.... Suits challenging any other actions under this chapter shall be filed in the appropriate court.

16 U.S.C. § 839f(e)(5). We have consistently interpreted this judicial review provision "with a broad view of this Court's jurisdiction and a narrow definition of district court jurisdiction." *Pacific Power and Light v. Bonneville Power Admin.*, 795 F.2d 810, 814 (9th Cir.1986). Under this section, suits challenging final actions by the BPA must be reviewed by this Court. *See Forelaws on Board v. Johnson*, 709 F.2d 1310, 1311–12 (9th Cir.1983); *Central Lincoln Peoples' Util. Dist. v. Johnson*, 686 F.2d 708, 710 (9th Cir.1982), *rev'd on other grounds sub. nom. Aluminum Co. of America v. Central Lincoln Peoples' Util. Dist.*, 467 U.S. 380, 104 S.Ct. 2472, 81 L.Ed.2d 301 (1984); *see also Public Util. Comm'r v. Bonneville Power Admin.*, 767 F.2d 622, 626 (9th Cir.1985).

According to the language of section 9(e)(5), district court jurisdiction is established only over "other actions" that do not lie within this Court's original jurisdiction. Although the district court has exclusive jurisdiction "over nonconstitutional suits challenging actions taken pursuant to the Act by agencies other than BPA or the Northwest Power Planning Council," it has "no jurisdiction over challenges to BPA or Northwest Power Planning Council actions under the Act." *Pacific Power and Light*, 795 F.2d at 814.

Original jurisdiction in this Court "arises because the actions of a particular agency are being challenged and because of the nature of the agency action at issue." *Id.*

---

1. We have also recognized two criteria for determining whether declaratory relief is appropriate in a given case:
   (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) where it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.

*McGraw–Edison Co. v. Preformed Line Products Co.*, 362 F.2d 339, 343 (9th Cir.), *cert. denied*, 385 U.S. 919, 87 S.Ct. 229, 17 L.Ed.2d 143 (1966) (quoting E. Borchard, *Declaratory Judgments*, 299 (2d ed. 1941); *see also Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir.1986)). The circumstances of this case meet these criteria.

at 816. Because constitutional issues are not raised here, jurisdiction under section 9(e)(5) does not turn on the legal theory underlying the suit. *Id.* It matters not that the Cooperatives attempt to base their theory of recovery in part outside of the Northwest Power Planning Act.[2] In examining the nature of the agency action being challenged, our focus is "on the agency being attacked and whether the factual basis for the attack is an agency action authorized by the Act." *Id.*

The nature of the agency action being challenged by the Cooperatives is the Administrator's final action as to the marketing and allocation of electric power, a function that is governed extensively by the Northwest Power Planning Act. The Cooperatives maintain that they do not challenge a final determination "under" the Northwest Power Planning Act. However, the effect of their action is to challenge the BPA's power-marketing decision. *See id.* at 815 (reasoning that despite appellant's legal theory underlying the suit, the Northwest Power Planning Act "does not permit district court jurisdiction where the effect of the action is to challenge a BPA proceeding"). Accordingly, the action is subject to our exclusive jurisdiction under 16 U.S.C. § 839f(e)(5).

Our conclusion that original jurisdiction lies within this Court is further supported by the Northwest Power Planning Act's legislative purpose. In interpreting section 9(e)(5), our task is to construe its words in light of the purposes Congress sought to serve. *See Dickerson v. New Banner Inst., Inc.,* 460 U.S. 103, 118, 103 S.Ct. 986, 995, 74 L.Ed.2d 845 (1983). We have recognized that one of Congress's primary objectives in providing direct review by this Court is to expedite litigation challenging BPA actions under the Northwest Power

Planning Act. *Pacific Power and Light,* 795 F.2d at 815; *Forelaws on Board,* 709 F.2d at 1312. Permitting district court jurisdiction where a party challenging a BPA decision partially grounds its theory of recovery outside of the Northwest Power Planning Act would frustrate Congress's intent. Such bifurcation of jurisdiction between this Court and the district court would be irrational in light of the statutory emphasis upon prompt resolution of litigation. *See Forelaws on Board,* 709 F.2d at 1313.

Because we find that the Administrator's power allocation decision was "a final action and decision taken pursuant to [the Northwest Power Planning] Act," 16 U.S.C. § 839f(e)(5), original jurisdiction over the Cooperatives' challenge to the Administrator's decision lies exclusively with this Court.[3]

### III

Although we review the construction of statutes *de novo* as a question of law, *United States v. Louisiana–Pacific Corp.,* 754 F.2d 1445, 1447 (9th Cir.1985), we accord substantial deference to the interpretation given statutes by the officers or agency charged with their administration. *Aluminum Co. of America v. Central Lincoln Peoples' Util. Dist.,* 467 U.S. 380, 389, 104 S.Ct. 2472, 2479, 81 L.Ed.2d 301 (1984) (reasoning that "the Administrator's interpretation of the [Northwest Power Planning] Act is to be given great weight"); *Trinity County Pub. Utils. v. Harrington,* 781 F.2d 163, 165 (9th Cir. 1986). To uphold the BPA's interpretation, " 'we need not find that [its] construction is the only reasonable one, or even that it is the result we would have reached had the question arisen in the first instance in judi-

---

**2.** The Cooperatives, however, rely in part directly on the savings provision found in section 10(f) of the Northwest Power Planning Act. 16 U.S.C. § 839g(f). The Administrator's decision to reject the Cooperatives' claim under section 10(f) is thus a final action and decision taken pursuant to the Northwest Power Planning Act. As such, original jurisdiction lies within this Court. 16 U.S.C. § 839f(e)(5). Moreover, as the district court reasoned, the inclusion of this savings provision into the Northwest Power

Planning Act is indicative of Congress's intent that decisions of the BPA regarding allocation and marketing of power from Libby are to be governed by provisions of the Act.

**3.** Because the district court properly concluded that it was wholly without jurisdiction to hear the complaint, we dismiss the Cooperatives' appeal from the transfer order.

cial proceedings.' ... We need only conclude that it is *a* reasonable interpretation of the relevant provisions." *American Paper Inst., Inc. v. American Electric Power Serv. Corp.*, 461 U.S. 402, 422–423, 103 S.Ct. 1921, 1932–33, 76 L.Ed.2d 22 (1983) (quoting *Unemployment Compensation Comm'n v. Aragon*, 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136 (1946)) (emphasis in original); *see also Aluminum Co.*, 467 U.S. at 389, 104 S.Ct. at 2479. Nonetheless, the courts are the final authorities on issues of statutory construction. *See Federal Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981). After examining the relevant statutes and legislative history, we conclude that Congress has not established a Montana preference for Libby power.

■ In construing statutes in a case of first impression, we first look to the language of the controlling statutes, and second to legislative history. *See United States v. Dadanian*, 818 F.2d 1443, 1448 (9th Cir.1987). Absent a clearly expressed legislative intent to the contrary, the plain language must ordinarily be regarded as conclusive. *Consumer Prod. Safety Comm'n v. GTE Sylvania*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *see also Dadanian*, 818 F.2d at 1448.

■ As the Cooperatives are forced to concede, absolutely no language in the Flood Control Act of 1950, Pub.L. 81–516, 64 Stat. 170, 179 (1950), which authorized the construction of Libby, expressly provides that Libby electric power is to be marketed in Montana on a preferential basis. Nor did Congress insert any language in subsequent appropriation acts that would indicate that it was legislating a Montana preference for Libby. *See* Third Supplemental Appropriation Act for 1961,

Pub.L. No. 87–14, 75 Stat. 20 (1961); Public Works Appropriation Act for 1967, Pub.L. No. 89–689, 80 Stat. 1002 (1966). Although it was fully within its authority to amend the Flood Control Act by including specific language in later appropriation bills, *see Skoko v. Andrus*, 638 F.2d 1154, 1158 (9th Cir.), *cert. denied*, 444 U.S. 927, 100 S.Ct. 266, 62 L.Ed.2d 183 (1979), Congress did not do so.

If Congress intended to establish a Montana preference for Libby power, it would have expressly set forth such a preference as it did when it authorized construction of the Hungry Horse Dam, which is located in northwestern Montana:

> For the purpose of irrigation and reclamation of arid lands, for controlling floods, improving navigation, regulating the flow of the South Fork of the Flathead River, for the generation of electric energy, and for other beneficial uses *primarily in the State of Montana* but also in downstream areas, the Secretary of the Interior is authorized and directed to proceed as soon as practicable with the construction ... of the proposed Hungry Horse Dam.

Act of June 5, 1944, ch. 234, 58 Stat. 270 (codified as amended at 43 U.S.C. § 593a) (emphasis added). The BPA acknowledges the Montana preference in the sale of power produced at Hungry Horse for use in Montana. The BPA has marketed such power in accordance with such preference. As to the Libby project, however, the Administrator correctly concluded that no express statutory preference for Montana existed.[4]

We next turn our attention to ascertain whether any legislative history demonstrates a clearly expressed legislative intent to create a Montana preference for Libby. Because the Flood Control Act's accompanying record of floor debate con-

---

**4.** In the Pacific Northwest Preference Act of 1964, Pub.L. 88–522, 78 Stat. 756 (codified as amended at 16 U.S.C. §§ 837–837h), Congress limited BPA's service territory to the Pacific Northwest, as it was defined in the Act. *See* 16 U.S.C. § 837(b). In areas such as Eastern Montana, which was excluded from the statutory definition, *see id.*, only surplus energy and sur-

plus peaking capacity could be sold. 16 U.S.C. § 837a. A limited exception, however, was specifically preserved for "the geographical preference of power users in the State of Montana which is established by the Hungry Horse Dam Act." 16 U.S.C. § 837h. No mention was made in the Pacific Northwest Preference Act of a similar preference or exception for Libby.

tains no evidence of such an intent, the Cooperatives instead base their theory largely upon colloquies and statements that occurred over a decade later during the treaty ratification[5] and appropriations processes. In these colloquies and oral statements, Montana senators expressed their "understanding" that there would be a Montana power preference for Libby similar to the one for the Hungry Horse project. *See, e.g.,* 107 Cong.Rec. 4141 (1961) (statements of Senator Mansfield); 107 Cong.Rec. 4876–77 (1961) (statements of Senators Mansfield and Metcalf); 112 Cong.Rec. 25,779–80 (1966) (statements of Senator Mansfield). However, such selective excerpts of legislative history only demonstrate that Montana senators hoped that a Montana preference would attach to Libby power. Unless consistent with plain statutory language and other legislative history, such colloquies and statements by individual legislators have no controlling effect. *See Brock v. Pierce County,* 476 U.S. 253, 106 S.Ct. 1834, 1840, 90 L.Ed.2d 248 (1986). As the Supreme Court has reasoned:

> Oral testimony of ... individual congressmen, unless very precisely directed to the intended meaning of particular words in a statute, can seldom be expected to be as precise as the enacted language itself. To permit what we regard as clear statutory language to be materially altered by such colloquies, which often take place before the bill has achieved its final form, would open the door to the inadvertent, or perhaps even planned, undermining of the language actually voted on by Congress and signed into law by the President.

*Regan v. Wald,* 468 U.S. 222, 237, 104 S.Ct. 3026, 3035, 82 L.Ed.2d 171 (1984). Because Congress never expressly acted upon the expectation of the Montana senators, their individual statements are insufficient to

control the intent of Congress. The Montana senators' oral expressions of hope simply found no written expression in the appropriation bills. Congress was fully aware of how it could set forth an express preference, as it did with the Hungry Horse Dam. We will not infer a geographic preference where Congress has chosen not to specify one.

▮ The Cooperatives alternatively contend that section 10(f) of the Northwest Power Planning Act, read in conjunction with the entirety of congressional proceedings, creates a Montana reservation for Libby power. Section 10(f) provides:

> The reservation under law of electric power primarily for use in the State of Montana by reason of construction of Hungry Horse and Libby Dams and reservoirs within that State is hereby affirmed.

16 U.S.C. § 839g(f). We avoid any statutory interpretation that renders any section superfluous and does not give effect to all of the words used by Congress. *Beisler v. CIR,* 814 F.2d 1304, 1307 (9th Cir.1987). The Cooperatives, however, place undue reliance on section 10(f). Seeking to preserve the *status quo ante,* this savings provision only affirms whatever reservation under law existed prior to the Northwest Power Planning Act.[6] Because no Montana reservation for Libby power was expressly created by Congress in the earlier legislation, a simple savings clause cannot later serve to create a preference that Congress never set forth. We conclude that Congress did not establish a preference prior to enactment of section 10(f), nor is this section sufficient to create such a new geographic reservation.

In the Cooperatives' original petition to review the BPA's action, No. 86–7602, judgment is entered for respondent Administrator of the BPA in accordance with this

---

5. Because the Libby project backed water into Canada, the United States negotiated the Columbia River Joint Development Treaty with Canada in 1961.

6. Indeed, the Senate Committee report explained that this savings provision was intended to insure that the Northwest Power Planning

Act "will not impair the *existing reservation* of certain electric power from the Hungry Horse and Libby Dams." S.Rep. No. 272, 96th Cong., 1st Sess. 35 (1979), U.S.Code Cong. & Admin. News 1980, p. 5989 (emphasis added). The Act was not intended to create any preference that did not exist previously.

opinion. Costs are awarded in favor of the respondent.

The order of the district court declining jurisdiction and transferring the action, No. 87–7080, is AFFIRMED.

The Cooperatives' appeal from the transfer order, No. 87–3624, is DISMISSED.