UNITED STATES of America, Plaintiff–Appellee,

v.

Milton SCOTT, Defendant–Appellant.

No. 86–1366.

United States Court of Appeals, Ninth Circuit.

Argued Sept. 17, 1987.

Submitted March 1, 1988.

Decided Oct. 19, 1988.

Don Beury, Beury & Schubel, Las Vegas, Nev., for defendant-appellant.

Paul Wommes, Asst. U.S. Atty., Las Vegas, Nev., for plaintiff-appellee.

\* Honorable Robert M. Takasugi, District Judge, Central District of California, sitting by designation.

Before CANBY and BOOCHEVER, Circuit Judges, and TAKASUGI, District Judge.\*

TAKASUGI, District Judge:

Defendant Milton Scott appeals his conviction for conspiracy to unlawfully possess firearms, possession and transfer of such unregistered firearms, as well as for aiding and abetting those substantive offenses.

A special agent of the Bureau of Alcohol, Tobacco and Firearms ("ATF") engaged in an undercover investigation of Scott and his co-defendants. The government agent purported to be a purchaser of automatic weapons. He purchased two such weapons from Scott and his co-defendants. Several of the conversations between the government agent and the defendants were tape-recorded and the audible portions were received as evidence in the trial.

Scott was sentenced to five years on the conspiracy count under 18 U.S.C. § 371 (1982) and, pursuant to the enhancement provisions of 18 U.S.C. § 3575 (1982), an additional five years was imposed. For possession and transfer of firearms under 26 U.S.C. §§ 5861(d)–(e), 5871 (1982 and Supp. III 1985) and aiding and abetting under 18 U.S.C. § 2 (1982), Scott was sentenced to ten years, with a five-year enhancement. The court ordered these terms to run consecutively, for a total sentence of twenty-five years.

In prosecuting this appeal, Scott raises three issues: (1) whether it was error to allow admission of the audible portions of the tape-recordings, (2) whether Scott was entrapped as a matter of law or whether the government engaged in misconduct in violation of the due process clause, and (3) whether the sentence imposed was unduly harsh.

## I. Admissibility of Tapes

Scott challenges the trial court's admission of the aforementioned audio tape-recordings. Scott appears to be arguing that this was error because the portions of the tapes that were excluded for inaudibility could have shown entrapment. The government contends that this issue was not preserved for appeal as no contemporaneous objection was made at trial and that, in any case, the admission was not an abuse of discretion.

■ Scott relies on his pretrial motion as being sufficient to preserve the issue for appeal. "[W]here the substance of the objection has been thoroughly explored during the hearing on the motion *in limine,* and the trial court's ruling permitting introduction of evidence was explicit and definitive, no further action is required to preserve for appeal the issue of admissibility of that evidence." *Palmerin v. City of Riverside,* 794 F.2d 1409, 1413 (9th Cir. 1986).

The motion pertaining to the tape-recordings to which Scott refers is not the type of motion that *Palmerin* intended to recognize as being sufficient to preserve this issue on appeal. The pretrial motion filed by Scott sought a hearing and determination as to the admissibility of the tapes with Scott's objective primarily being the exclusion of portions of the tape referring to drug trafficking as highly prejudicial. Nowhere in the motion did Scott contend that all audible portions of the tapes should be excluded. In fact, in addition to seeking the exclusion of prejudicial drug trafficking portions of the tapes, the motion appears to assume that only the inaudible portions should be excluded and makes no mention of any concern that would arise by reason of that exclusion.

Based upon the above discussion, Scott's pretrial motion did not come within the *Palmerin* decision. Even if this issue were properly preserved for appeal, Scott fails to establish that the admission of the tapes was error.

## II. Entrapment as a Matter of Law/Government Misconduct

Defendant contends that the government undercover agent engaged in repeated and persistent solicitation of Scott with offers of illegal contraband to induce Scott to commit the crime and that such conduct constituted entrapment as a matter of law and a violation of Scott's due process rights.

■ "The defense of entrapment has two elements: (1) the defendant was induced to commit the crime by a government agent, and (2) he was not otherwise predisposed to commit the crime." *United States v. Barry,* 814 F.2d 1400, 1401 (9th Cir.1987). Scott claims that he harbored no predisposition. However, because the recorded conversations of Scott clearly indicate otherwise, it cannot be concluded, as a matter of law, that Scott was not predisposed to commit the subject offense.

■ Even where predisposition is proven, this circuit has recognized an "outrageous government conduct" defense based on due process. *E.g., United States v. Emmert,* 829 F.2d 805, 810–11 (9th Cir. 1987); *United States v. Smith,* 802 F.2d 1119, 1125 (9th Cir.1986). The defense is limited, however, to situations in which " 'the government's conduct is so grossly shocking and outrageous as to violate the universal sense of justice.' " *United States v. Ramirez,* 710 F.2d 535, 539 (9th Cir.1983) (quoting *United States v. Ryan,* 548 F.2d 782, 789 (9th Cir.1976), *cert. denied,* 430 U.S. 965, 97 S.Ct. 1644, 52 L.Ed. 2d 356 (1977)). With respect to defendant's argument that the government's conduct was so outrageous as to reach due process dimensions, Scott refers to government conduct typical of an undercover operation. The conversations between Scott and the government agents show no evidence of overreaching, undue pressure or other misconduct on the part of the agent. As such, Scott has not shown a due process violation.

## III. Severity of Sentence as Dangerous Special Offender

Scott challenges his prison sentence on two grounds. First, he claims that 18 U.S.

C. § 3575 does not authorize a district court to impose multiple enhanced sentences for felonies committed on the same occasion. Scott also argues that, even if separate enhancements are permitted, the court abused its discretion by enhancing his sentences to consecutive terms totaling twenty-five years, because he is fifty-three-years-old, has suffered a heart attack, and currently has cancer. We have authority to review enhanced sentences pursuant to 18 U.S.C. § 3576 (1982), and we reject Scott's claims.

Section 3575 was enacted as part of the Organized Crime Control Act of 1970. Pub.L. No. 91–452, tit. X, 84 Stat. 922, 948. It authorizes enhanced prison sentences for felonies committed by three types of statutorily defined "special offenders" who are found to be "dangerous." Subsection (e)(1), at issue in this appeal, provides that a defendant is a special offender if .he

> has previously been convicted in courts of the United States [or] a State ... for two or more offenses committed on occasions different from one another and from such felony and punishable in such courts by death or imprisonment in excess of one year, for one or more of such convictions the defendant has been imprisoned prior to the commission of such felony, and less than five years have elapsed between the commission of such felony and either the defendant's release, on parole or otherwise, from imprisonment for one such conviction or his commission of the last such previous offense or another offense punishable by death or imprisonment in excess of one year....

18 U.S.C. § 3575(e)(1).

A special offender is considered dangerous, and thus eligible for sentence enhancement, if the district court determines that "a period of confinement longer than that provided for such felony is required for the protection of the public from further criminal conduct by the defendant." *Id.* § 3575(f). The court's decision whether a defendant is a dangerous special offender is based on a "preponderance of the information" received from the presentence report, a special hearing, and the trial itself. *Id.* § 3575(b).

Section 3575 does not create a separate offense, but instead provides an increased penalty for the defendant's current felony. *United States v. Williamson,* 567 F.2d 610, 614–15 (4th Cir.1977); *United States v. Stewart,* 531 F.2d 326, 332 (6th Cir.), *cert. denied,* 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 376 (1976). The statute also has been held not to violate the constitutional prohibitions against cruel and unusual punishment, double jeopardy, ex post facto laws, and bills of attainder, or the right to be indicted by a grand jury and to have all elements of a crime proven by the government beyond a reasonable doubt. *United States v. Ilacqua,* 562 F.2d 399, 404–05 (6th Cir.1977), *cert. denied,* 435 U.S. 906, 98 S.Ct. 1453, 55 L.Ed.2d 497 (1978).

Scott qualified as a special offender because on three prior occasions he had been convicted of felonies in California state courts, the last resulting in his parole in May 1981. [Dangerous Special Offender Notice at 3] The district court found that Scott was dangerous and imposed an additional five-year prison term on both the conspiracy and firearms convictions. Scott contends that section 3575 does not permit separate enhancement of different felonies committed on the same , occasion. The government maintains that multiple enhancements are authorized. It reasons that, because a convicted defendant may receive separate sentences for conspiracy and the completed crime, *United States v. Batimana,* 623 F.2d 1366, 1370 (9th Cir.), *cert. denied,* 449 U.S. 1038, 101 S.Ct. 617, 66 L.Ed.2d 500 (1980), both sentences, if imposed on a dangerous special offender, may be enhanced.

Defining the scope of 18 U.S.C. § 3575 involves statutory interpretation, an issue of law we review de novo. *United States v. West,* 826 F.2d 909, 911 (9th Cir.1987). This is a question of first impression. We therefore "look first to the language of the statute itself, and second to the statute's legislative history." *United States v. Dadanian,* 818 F.2d 1443, 1448 (9th Cir.1987).

Examining the language, we note that Congress used the singular, rather than plural, form of the word "felony" as the event triggering enhanced sentences under section 3575. Subsection (a), for example, refers to "the prosecution of a defendant in a court of the United States for an alleged felony" and requires the government to give notice of its intention to prove "that the defendant is a dangerous special offender who upon conviction for such felony is subject to the imposition of a sentence under subsection (b)." If notice is given, a special sentencing hearing is triggered by "any ... verdict or finding of guilty of the defendant of such felony." *Id.* § 3575(b).

▉ Subsection (b) limits enhanced sentences to "an appropriate term not to exceed twenty-five years and not disproportionate in severity to the maximum term otherwise authorized by law for such felony." Subsections (d), (e), and (f) likewise refer to the defendant's latest offense as "such felony." Absent statutory language or a clearly expressed congressional intent to restrict this singular usage of "felony," Scott's prosecutor was authorized to seek separate enhancements for each one of the felonies alleged in the indictment. [Dangerous Special Offender Notice at 5]

▉ The "occasion" language used in 18 U.S.C. § 3575(e)(1) does not restrict imposition of separate enhancements for each felony conviction. That passage defines a special offender as one who "has previously been convicted in courts of the United States [or] a state ... for two or more [felonies] committed on occasions different from one another and from such felony." This limits sentence enhancement under section (e)(1) to three-time criminals, fulfilling the purpose of the provision in punishing the "habitual offender." H.R.Rep. No. 1549, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin.News 4007, 4038; S.Rep. No. 617, 91st Cong., 1st Sess. 83, 87 (1969).

Congress expressly determined that first-time criminals committing multiple felonies should not be considered "habitual" offenders on their next conviction. For this purpose, Congress required that the felonies be committed on separate occasions. It does not follow that this separate occasion requirement also substantively limits the enhanced punishment that may be imposed on an habitual offender. Otherwise, Congress would have specified that no more than one enhancement could be added to sentenced imposed for felonies committed on one occasion.

The view that multiple felonies should be considered separately for sentencing purposes under section 3575 finds support in two Second Circuit cases, *United States v. DiFrancesco,* 604 F.2d 769 (2d Cir.1979), *rev'd on other grounds,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), and *United States v. Calabrese,* 755 F.2d 302 (2d Cir.1985).

The applicability of the enhancement statute was at issue in *DiFrancesco.* Judge Haight argued in his concurring opinion that, because DiFrancesco was convicted on two separate counts carrying a maximum sentence of forty years if served consecutively, an enhanced sentence, limited by subsection (b) to twenty-five years, was therefore unavailable. 604 F.2d at 788–89. The majority disagreed, holding in a footnote that the counts should not be viewed together:

> However, a defendant who has been convicted on more than one count comes before the district court for sentencing on each of the counts for which he has been convicted.... [Section] 3575(f) refers to a need for confinement longer than that provided for the underlying "felony," not "felonies."
>
> Therefore, the application of § 3575 depends on a particularized determination with regard to each of the felonies for which dangerous special offender sentencing is sought.

*DiFrancesco,* 604 F.2d at 781 n. 13.

*Calabrese* involved the "habitual offender" provision at issue in this case. After the defendant was convicted on all six counts of an indictment, District Judge Ward "determined that Calabrese was 'eligible for enhanced sentences.'" 755 F.2d at 305. The court imposed five additional years on each of the first four counts but

did not enhance counts five and six. The terms were to be served concurrently, leaving an aggregate sentence of fifteen years. *Id.*

The Second Circuit panel affirmed Calabrese's convictions but vacated and remanded the sentences on counts one and two because the ten-year terms imposed before enhancement were less than the fifteen-year maximum provided for those felonies. In its discussion, the court reaffirmed the rule that each count must be addressed separately:

> The determination of whether the defendant is "dangerous" is related by section 3575(f) to "such felony," meaning the specific felony charged in the count on which the defendant is to be sentenced. Moreover, as we said in [*DiFrancesco,*] "the application of § 3575 depends on a particularized determination with regard to each of the felonies for which dangerous special offender sentencing is sought." [Citation]
>
> Though Judge Ward was entitled to sentence Calabrese up to 15 years on each of Counts 1 and 2, pursuant to 21 U.S.C. §§ 841, 846, *and could have enhanced the sentence on those counts* beyond 15 years pursuant to 18 U.S.C. § 3575, he could not impose "a five-year enhanced term" on those counts and at the same time impose an aggregate sentence on each count within the normal statutory maximum.

*Calabrese,* 755 F.2d at 306 (emphasis added). At least two of the first three counts in Calabrese's indictment involved felonies committed on one "occasion." *See id.* at 305. Nevertheless, the court indicated that counts one and two each could have been enhanced by the district court and the third count was enhanced. *Id.* at 305–06.

■ In light of the plain language of section 3575, its history, and the cases discussed, we conclude that the district court did not err in imposing multiple sentence enhancements on Scott even though the felonies were committed on the same occasion. We also find that the court was aware of Scott's age and health and did not abuse its discretion by sentencing him to consecutive prison terms totaling twenty-five years. Scott's criminal background, including his felony convictions, supports the court's finding of dangerousness under subsection (f).

The judgment of the district court is AFFIRMED.